AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

FILED

JAN 14 2020

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

1 Cellphone
Seized as FP&F No. 2020250600025901

)
)
)
)
)
)

Case No. 2 0 M J 0 1 4 6

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960, 963 | Possession with intent to Distribute a Controlled Substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael Hensley, Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 1/14/20 _____

_____
*Judge's signature*

City and state: San Diego, California

Hon. Bernard G. Skomal, United States Magistrate Judge
_____
*Printed name and title*

1

## AFFIDAVIT

2    I, Special Agent Michael Hensley, being duly sworn, hereby state as follows:

3

4    ## INTRODUCTION

5    1.    I submit this affidavit in support of an application for a warrant to search the

following electronic device(s):

6

7        1 Cellphone

        Seized as FP&F No. 2020250600025901

8        ("Target Device")

9

10   as further described in Attachment A, and to seize evidence of crimes, specifically

11   violations of Title 21, United States Code, Section(s) 952 and 960, as further described in

12   Attachment B.

13   2.    Agents seized the Target Device on December 4, 2019, from Fernando

ZAMORA's ("ZAMORA") vehicle at the time he was arrested at the Otay Mesa Port of

14   Entry, San Diego, California for importing approximately 19.36 kilograms (42.68 pounds)

15   of Methamphetamine, 2.38 kilograms (5.25 pounds) of Heroin, and 1.16 kilograms (2.56

16   pounds) of Fentanyl from Mexico into the United States. *See U.S. v. ZAMORA* Case No.

17   19-cr-5270 (S.D. Cal.) at ECF No. 14 (Information). The Target Device is currently in the

18   evidence vault located at 9495 Customhouse Plaza, San Diego, CA, 92154.

19   3.    The information contained in this affidavit is based upon my training,

20   experience, investigation, and consultation with other members of law enforcement.

21   Because this affidavit is made for the limited purpose of obtaining a search warrant for the

22   Target Device, it does not contain all the information known by me or other agents

23   regarding this investigation.  All dates and times described are approximate.

24   ## BACKGROUND

25   4.    I am a Special Agent employed with the United States Department of

26   Homeland Security, Immigration and Customs Enforcement, Homeland Security

27   Investigations ("HSI").  I have been so employed since December 11, 2016.  I am

28   currently assigned to the ICE/ HSI San Diego Office.

5.     I have completed approximately 24 weeks of intensive training in criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia (09/01/2017).  As a result of my training and experience as a Special Agent, I am familiar with federal criminal statues to include violations of Titles 18, 19, 21, and 8 of the United States Code.

6.     Prior to being an HSI Special Agent, I was an Immigration Officer under the Fraud Detection and National Security division of the United States Citizenship and Immigration Services.  I also have over six (6) years of law enforcement experience as a United States Border Patrol Agent.  As a Border Patrol Agent, I was assigned to conduct administrative and criminal investigations to identify potential threats towards national security and public safety.  I conducted undercover operations in a plain clothes capacity investigating human and narcotic smuggling trends for over two years.

7.     Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and

2

consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.     On December 4th, 2019, at approximately 8:20 AM, Fernando ZAMORA made entry into the United States from Tijuana, Baja California, Mexico through the Otay Mesa, California Port of Entry. ZAMORA was the driver of a 2001 white Honda

Civic bearing California license plate 4SZM175. Customs and Border Protection Officers discovered approximately 19.36 kilograms (42.68 pounds) of methamphetamine, 2.38 kilograms (5.25 pounds) of heroin and 1.16 kilograms (2.56 pounds) of fentanyl concealed in the rear quarter panel area of the vehicle. Agents placed ZAMORA under arrest and seized the Target Device from the vehicle at the time he was arrested.

11. ZAMORA was read his Miranda rights by reading verbatim from a pre-printed form. ZAMORA stated that he understood his rights and waved them verbally and by signing the pre-printed form which was read to him.

12. During the interview, ZAMORA began explaining how he obtained the 2001 Honda Civic. ZAMORA claimed he bought the vehicle in Mexico for $800.00 USD approximately one month prior to his arrest. ZAMORA stated the vehicle is registered to a female but didn't know her name. ZAMORA claimed that he found the vehicle through an advertisement on Facebook. After purchasing the car, ZAMORA claimed he deleted all Facebook messages and correspondence with the seller.

13. ZAMORA claimed he didn't know how the narcotics got into his car. ZAMORA stated his house in Tijuana, Mexico has a garage with locks along with two cameras and it didn't make sense that drugs would end up in his vehicle.

14. When asked about Target Device, ZAMORA identified Target Device as his cell phone and declined to give consent to search his cellphone to corroborate the information from his testimony.

15. On December 4, 2019, at approximately 4:18 PM, Customs and Border Protection Officers arranged to meet with ZAMORA's father (later identified as Fernando ZAMORA-Gonzalez) at the Otay Mesa Pedestrian Secondary area in order to return ZAMORA's personal property. ZAMORA-Gonzalez was accompanied by his spouse (later identified as Alejandrina FLORES DE ZAMORA). A subsequent interview of ZAMORA-Gonzalez and FLORES DE ZAMORA was conducted.

16. ZAMORA-Gonzalez claimed ZAMORA received the vehicle from a

friend named "Saul". ZAMORA-Gonzalez explained that Saul was the owner of the vehicle and let his son borrow the car. ZAMORA-Gonzalez claimed ZAMORA received the Honda Civic from Saul approximately three weeks prior to his arrest.

17.     ZAMORA-Gonzalez mentioned he arrived at ZAMORA's house on Sunday (four days prior to ZAMORA's arrest) and noticed the Honda Civic wasn't there. When asked where the vehicle was, ZAMORA told his father that one of Saul's cars broke down and he needed the Honda Civic back. ZAMORA told his father that Saul took the car for the weekend. The car was returned to ZAMORA the following Monday (two days prior to ZAMORA's arrest).

18.     In light of the above facts, ZAMORA's statements, and my own experience and training, there is probable cause to believe ZAMORA was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Accordingly, I request permission to search the Target Device for data beginning on November 4, 2019 through December 5, 2019, the date of ZAMORA's arrest.

19.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some

solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20.     Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

23.     Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of ZAMORA's violations of Title 21, United States Code, Sections 952, 960 and 963.

24.     Because the Target Device was seized at the time of ZAMORA's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device.  As stated above, I believe that the appropriate date range for this search is from November 4th, 2019 through December 5th, 2019.

1    25.    Accordingly, I request that the Court issue a warrant authorizing law

2  enforcement to search the item(s) described in Attachment A and seize the items listed in

3  Attachment B using the above-described methodology.

4

5  I swear the foregoing is true and correct to the best of my knowledge and belief.

6

7

8                                                  Special Agent Michael Hensley
                                                   Homeland Security Investigations
9

10  Subscribed and sworn to before me this ___/4___ day of January, 2020.

11

12  _____
    Hon. Bernard G. Skomal
13  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> 1 Cellphone
> Seized as FP&F No. 2020250600025901
> (the "Target Device")

The Target Device is currently in the evidence vault located at 9495 Customhouse Plaza, San Diego, CA, 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 4th, 2019 through December 5th, 2019:

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.